UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Travis Hudson,

                Petitioner,        Case No. 20-cv-12034

v.                                   Judith E. Levy
                                       United States District Judge

Connie Horton,
                                       Mag. Judge Anthony P. Patti

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS, AND DENYING AS MOOT PETITIONER'S MOTION TO ACCEPT REPLY AS A LATE FILING [11]**

Petitioner Travis Hudson filed a habeas corpus petition under 28 U.S.C. § 2254. He challenges his convictions for involuntary manslaughter, Mich. Comp. Laws § 750.321, carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and two counts of possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. He raises four claims for habeas relief.

The state courts' denial of these claims was not contrary to or an unreasonable application of Supreme Court precedent. The petition for habeas corpus is denied. The Court also denies a certificate of appealability, and grants Petitioner leave to proceed *in forma pauperis* on appeal.

I.   Background

Petitioner's convictions arise from a confrontation over a stolen cell phone. The Michigan Court of Appeals provided this overview of the circumstances leading to Petitioner's convictions:

> In the afternoon on September 28, 2014, defendant was attempting to locate his stolen iPhone. Using a "Find my Phone" application, defendant believed that he had traced the phone to the residence of Armon Parker, who was at home playing videogames with his friends, Steffon Causey and Davion Witherspoon. Defendant, who was not acquainted with Parker, Witherspoon, or Causey, knocked on Parker's front door and asked Parker and Witherspoon whether they had any information about his missing phone. While Parker and Witherspoon were conversing with defendant, Causey also came to the door, telling Parker and Witherspoon to stop talking with defendant and to shut the door. Causey tried to close the door, and Parker and Witherspoon told Causey to "chill out." As defendant gestured during the conversation, his shirt came up, and Parker and Witherspoon both noticed that he was carrying a gun.
>
> Ultimately, Parker let defendant inside the home. Then, defendant and Causey got into a confrontation regarding who

should go down the stairs to the basement first. During the altercation, defendant felt scared in light of Causey's aggressive behavior, so he pulled out his loaded gun.[1] He claimed that he held the gun by his side, pointing downward; that his hand was not on the trigger; and that he did not point the gun at Causey. Defendant and Causey exchanged more words, and Causey stepped toward defendant twice. Both times, defendant pushed Causey away with his forearm. Defendant eventually said, "I'm going to get with you later," and lowered his head, intending to step away. At that moment, Causey rushed toward defendant, reached for the gun, and grabbed defendant's arm, instigating a struggle over the weapon. Defendant said his back ended up against the front door during the struggle for the gun, and he attempted to retreat from Causey, but he could not reach the latch with his back arm to get out the door. Then, the gun went off. Defendant claimed that his hands and Causey's hands were both on the weapon when it fired. Causey was struck by the discharged bullet, which entered his abdomen and exited through his buttocks. Defendant fled from the scene. The next day, Causey died from the gunshot wound.

---

[1] According to defendant, he pulled the gun out because he wanted Causey to leave him alone. He also testified that (1) he was not prepared to actually use it; (2) he did not knowingly put his hand on the trigger; (3) he did not deliberately shoot Causey, intend to kill him, or intend to cause him great bodily harm; (4) he did not know how the gun discharged; and (5) the shooting was an accident.

*People v. Hudson*, No. 330603, 2017 WL 1418185, at *1 & n.1 (Mich. Ct. App. Apr. 20, 2017).

Petitioner was convicted by an Oakland County Circuit Court jury of involuntary manslaughter and felony firearm. *Id.* at *1. Prior to trial,

Petitioner pleaded guilty to carrying a concealed weapon, being a felon in possession of a firearm, and one count of felony firearm. *Id.* On November 20, 2015, he was sentenced as a fourth habitual offender to 25 to 40 years for involuntary manslaughter, 5 to 40 years for being a felon in possession of a firearm, 5 to 40 years for carrying a concealed weapon, and 2 years for each felony-firearm conviction. *Id.*

Petitioner filed an appeal of right in the Michigan Court of Appeals claiming that the trial court improperly instructed the jury on the causation element of involuntary manslaughter. The Michigan Court of Appeals affirmed Petitioner's convictions. *Id.* The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Hudson*, 501 Mich. 911 (2017).

Next, Petitioner filed a motion for relief from judgment in the trial court claiming that the trial court abused its discretion by refusing to give a supplemental jury instruction on proximate causation, trial counsel was ineffective for failing to request a jury instruction on the victim's contributory negligence, and appellate counsel was ineffective for failing to raise these claims on direct appeal. The trial court denied the motion. (ECF No. 8-15). The Michigan Court of Appeals and Michigan

4

Supreme Court each denied Petitioner's applications for leave to appeal. *People v. Hudson*, No. 347742 (Mich. Ct. App. June 28, 2019); *People v. Hudson*, 505 Mich. 975 (2020) (ECF No. 8-19).

Petitioner then filed this petition for a writ of habeas corpus. The following claims are before the Court:

   I. The trial court failed to *sua sponte* give a jury instruction on the victim's contributory negligence, Mich. Crim. Jury Inst. 16.20, in violation of the Sixth Amendment right to a jury trial and the Fourteenth Amendment right to due process.

   II. The trial court refused to give a requested jury instruction on proximate causation, Mich. Crim. Jury Inst. 16.15, in violation of the Sixth Amendment right to a jury trial and the Fourteenth Amendment right to due process.

   III. Trial counsel was constitutionally ineffective for failing to request a jury instruction on the victim's contributory negligence, Mich. Crim. Jury Inst. 16.20.

   IV. Appellate counsel was constitutionally ineffective for failing to raise habeas claims II and III on appeal.

(ECF No. 1.) Respondent filed an answer in opposition. (ECF No. 7.) Petitioner filed a reply brief. (ECF No. 9.) Believing that the Court had not received his reply brief, Petitioner later filed a duplicative, second reply brief (ECF No. 10) and motion to accept the second reply as a late filing (ECF No. 11). The original reply brief was accepted for filing and

entered on the Court's docket. Accordingly, the Court will deny Petitioner's motion to accept the late filing as moot.

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

6

Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A state court's factual determinations are presumed correct on federal habeas review, unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Analysis

**A. Jury Instructions (Claims I and II)**

Petitioner's first two claims concern jury instructions. In his first claim, he argues that the trial court should have *sua sponte* provided Michigan Criminal Jury Instruction 16.20 regarding contributory negligence.[1] (ECF No. 1, PageID.4.) In his second claim, Petitioner argues that the trial court erred in denying defense counsel's request to instruct

---

[1] Michigan Criminal Jury Instruction 16.20 provides: "If you find that [name deceased] was negligent, you may only consider that negligence in deciding whether the defendant's conduct was a substantial cause of the accident."

7

the jury in accordance with Michigan Criminal Jury Instruction 16.15.[2] (*Id.* at PageID.5.)

In his reply brief, Petitioner moves to withdraw his claim regarding a contributory negligence instruction because he believes (mistakenly) that the claim is unexhausted. (ECF No. 9, PageID.1056–1057.) Petitioner properly exhausted this claim by raising it in the Michigan Court of Appeals and Michigan Supreme Court on direct review. *See Hudson*, 2017 WL 1418185, at *4–6. Accordingly, there is no need for Petitioner to withdraw his first claim and the Court denies his request.

Respondent argues that Petitioner's jury instruction claims are procedurally defaulted. (*See, e.g.*, ECF No. 7, PageID.152, 174.) "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [merits-based] question priority, for example, if it were easily resolvable against the

---

[2] Michigan Criminal Jury Instruction 16.15 provides: "It is not enough that the defendant's act made it possible for the death to occur. In order to find that the death of [name deceased] was caused by the defendant, you must find beyond a reasonable doubt that the death was the natural or necessary result of the defendant's act."

habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

Obtaining federal habeas relief for a jury instruction claim is "a difficult hill to climb." *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020). To show that a jury instruction violates due process, a habeas petitioner must demonstrate "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (internal quotation marks omitted).

A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law; instead, the relevant inquiry is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The jury instruction "must be

9

considered in the context of the instructions as a whole and the trial record." *Id.* at 72.

The burden of proving that omission of a jury instruction violated due process is even heavier than that imposed on an incorrect instruction claim. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred in instructing the jury under Michigan law, he alleges a violation of state law which does not warrant federal habeas relief. *See Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("[A] state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief."). State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Second, even if the trial court erred, such error was harmless. For purposes of federal habeas review, a constitutional error is considered harmless if it did not have a "substantial and injurious effect or influence" on the outcome of the proceeding. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009) (holding that *Brecht* is "always the test" in the Sixth Circuit). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "There must be more than a 'reasonable probability' that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (quoting *Brecht*, 507 U.S. at 637).

It is undisputed that Causey died from a bullet fired from Petitioner's gun. The evidence showed that it was reasonably foreseeable that Causey, when faced with Petitioner's gun, would attempt to disarm Petitioner and that the ensuing struggle could result in the discharge of the gun. In other words, there was substantial evidence showing that Petitioner was a proximate cause of Causey's death. Therefore, the Court finds that any error in failing to give the requested instructions did not

11

have a "substantial and injurious effect or influence" on the jury's verdict. *Brecht*, 507 U.S. at 637.

The absence of a contributory negligence instruction also does not entitle Petitioner to relief. Under Michigan law, a contributory negligence instruction "is appropriate when there is evidence suggesting that negligent conduct of the victim may be relevant to the determination of whether the defendant proximately caused the victim's death." *Hudson*, 2017 WL 1418185, at *4. The Michigan Court of Appeals held that the evidence did not warrant this instruction. *Id.* at *6. It is outside the province of a federal court on habeas review to second-guess a state court's interpretation of state law. *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003). Where a state appellate court has assessed the necessity and adequacy of a particular jury instruction under state law, a federal habeas court cannot question that state-law finding. *See id.*

Moreover, the record supports the state court's holding. Substantial evidence was presented to the jury to show that Petitioner was a proximate cause of Causey's death. Causey's attempt to wrestle the gun from Petitioner did not render his death an unforeseeable result of Petitioner's actions.

In sum, Petitioner has not established that the jury instructions, taken as a whole, rendered his trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (stating that a requested jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record") (internal quotation marks and citation omitted). Relief is denied on this claim.

## B. Ineffective Assistance of Trial Counsel (Claim III)

In his third claim, Petitioner argues that defense counsel was ineffective for failing to request a jury instruction on contributory negligence. A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

13

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals denied Petitioner's contributory negligence jury instruction claim because the facts did not support such an instruction. *Hudson*, 2017 WL 1418185, at *4–5. The state court's decision on the propriety of a jury instruction is a matter of state law the Court is bound to follow. *See Rashad*, 675 F.3d at 569. Thus, Petitioner cannot show that counsel was ineffective in failing to request this instruction when the Michigan Court of Appeals held that the instruction

14

was not justified under state law. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Petitioner is not entitled to habeas relief on this claim.

### C. Ineffective Assistance of Appellate Counsel (Claim IV)

Petitioner claims that appellate counsel was ineffective for failing to raise his second and third habeas claims on direct appeal. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The Supreme Court held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). Petitioner has not shown that his second and third

habeas claims have merit. Therefore, counsel was not ineffective in failing to raise these claims.

## IV. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotation marks and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability. The Court grants Petitioner leave

16

to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V. Conclusion

For the reasons set forth above, it is ordered that the petition for a writ of habeas corpus and a certificate of appealability are denied and the matter is dismissed with prejudice.

It is further ordered that Petitioner may proceed on appeal *in forma pauperis*.

It is further ordered that Petitioner's motion to accept a reply as a late filing (ECF No. 11) is denied as moot.

IT IS SO ORDERED.

Dated: August 14, 2023　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　JUDITH E. LEVY
　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 14, 2023.

　　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　　Case Manager